UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON D. CARBAJAL, | ) Case No.: EDCV 16-02076 JDE |
| | ) |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION AND |
| v. | ) ORDER |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## I.

## INTRODUCTION

Plaintiff Byron D. Carbajal filed a Complaint on September 29, 2016, seeking review of the Commissioner's denial of his application for Title II Disability Insurance Benefits ("DIB"). (*See* Dkt. No. 1.) On January 11, 2017, Defendant filed an Answer to Plaintiff's Complaint. (Dkt. No. 16.) All parties have consented to proceed, pursuant to 28 U.S.C. § 636(c), before the undersigned Magistrate Judge for all further proceedings, including entry of Judgment. (*See* Dkt. Nos. 13, 14, 15.) On April 6, 2017, the parties filed a "Joint Stipulation"

(sometimes hereinafter "J. Stip.") setting forth the disputed issues in the case. (Dkt. No. 22.) The matter is now under submission and ready for decision.

## II.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his first application for Title II DIB on December 7, 2011, alleging a disability onset date of July 9, 2009. (*See* Administrative Record ["AR"] 122.) Plaintiff alleged that he was disabled due to low back pain, "gouty arthritis" in his feet, and post-traumatic stress disorder ("PTSD"). (*See* AR 127.) Plaintiff has had two hearings before two different Administrative Law Judges ("ALJ").

Plaintiff was born on November 29, 1973, and at the time of his alleged onset of disability he was 36 years old. (AR 33, 133.) His only source of income is money he receives from the Veterans Affairs Department ("VA"). (AR 46-47.) He has not worked since June 15, 2013. (AR 47-48.) Plaintiff is divorced and he has two children, aged 21 and 11. (AR 46-47, 405.) Plaintiff lives with the family of a friend, and his daughter apparently sometimes lives with him. (AR 46-47, 405)

Plaintiff testified that he was in the Army, and he went to Iraq in 2003 and 2007, where he trained Iraqi forces. (AR 56.) Plaintiff says that he injured his back when he was in the Army, and he now suffers from PTSD. (AR 48-50, 56.) He asserts that he is preoccupied with war, death, and destruction, and hears sounds and has auditory hallucinations which interfere with his concentration. (AR 55-56.) His feet swell up, and when they do he uses a back brace and crutches; he has been told that there is a "50/50" chance that surgery would help him. (AR 50-52.) From around July 2009 to September 2014, he tried to take courses online through the University of Phoenix, but did not earn a degree. (*See* AR 45-46.)

On June 4, 2013, Plaintiff, represented by counsel, appeared at a first hearing before an ALJ at which a vocational expert ("VE") testified. (AR 69, 122.)

In an opinion dated June 14, 2013, the first ALJ found that Plaintiff was not disabled. (*See* AR 122-34.) In particular, the ALJ found that Plaintiff had three

severe impairments: (1) chronic lumbosacral musculoligamentous strain; (2) occasional episodes of gouty arthritis; and (3) PTSD. (AR 124.) The ALJ found that Plaintiff was unable to perform his past relevant work ("PRW"), which included "marksmanship instructor," "office manager," and "tractor trailer truck driver." (AR 132.) Nevertheless, based on the VE's testimony, the ALJ found that Plaintiff could perform three other jobs that existed in significant numbers in the economy: (1) "bench assembler," which the Dictionary of Occupational Titles ("DOT") describes at job no. 706.684-041; (2) "office helper," DOT no. 239.567-010; or (3) "toy assembler," DOT no. 731.687-034. (*See* AR 133-34.) Accordingly, that first ALJ denied Plaintiff's first application for DIB at step five of the five-step sequential evaluation, finding that Plaintiff had not been under a disability from July 9, 2009, the alleged onset date, through June 14, 2013, the date of the ALJ's decision. (AR 134.)

Notwithstanding that first denial, Plaintiff filed a second application for DIB on January 7, 2015, now alleging a slightly different disability onset date of July 11, 2009. (*See* AR 23.)

Another hearing was held before a second, different ALJ on March 15, 2016. (AR 23, 39-68.) Plaintiff was represented by an attorney at that second hearing, and a VE also testified. (AR 23.)

In another opinion dated April 6, 2016, the second ALJ found that Plaintiff was still not disabled. (*See* AR 23-34.)

### III.

### SUMMARY OF ADMINISTRATIVE DECISION

The opinion from the second ALJ recites the following:

> The claimant was found to be not disabled in a decision by
> an ALJ, dated June 14, 2014, based on a prior application
> for period of disability and disability insurance benefits
> protectively filed on December 7, 2011. (Exh. B1A.) The

claimant's current application alleges an onset date of
disability that is within the previously adjudicated period.
The undersigned finds, with respect to the previously
adjudicated period, that the prior decision by an ALJ is final
and that the same parties, law, fact, and issues are involved
under the current application. However, there still exists a
period after the effective date of the prior decision by the
ALJ during which the claimant continues to meet the
insured status requirements that must be addressed by a
decision on the merits. Accordingly, the request for a
hearing is not dismissed with respect to the unadjudicated
period, and this decision adjudicates the period from June 15
2013, through the date of this decision [*i.e.,* April 6, 2016].

(AR 23; parenthetical material in original; bracketed material added.)

The second ALJ again found that Plaintiff had the same three severe
impairments noted in the first opinion, that is (1) chronic lumbosacral
musculoligamentous strain; (2) occasional episodes of gouty arthritis; and (3)
PTSD. (AR 26.)

The second ALJ assessed Plaintiff's residual functional capacity ("RFC"),
and essentially found the same RFC that the first ALJ had assessed. (*Cf.* AR 27
with AR 126.) In particular, the second ALJ stated as follows:

[Plaintiff was] limited to no more than occasional stooping;
he was precluded from interacting with the public; his [sic]
was limited to no more than occasional interactions with
coworkers and supervisors; he was limited to no more than
occasional changes in the workplace setting; he was
precluded from performing complex and detailed work
activity, but he remained capable of performing unskilled

4

labor; and he would likely to be [sic] absent from work an
average of two days at a time every three months.

(AR 27; bracketed material added.)

In assessing the credibility of Plaintiff's subjective complaints, the ALJ
stated as follows:

The undersigned finds the claimant's allegations concerning
the intensity, persistence and limiting effects of his
symptoms are not consistent with the evidence. The
undersigned finds that despite the claimant's testimony,
there is no objective evidence of any worsening of his
impairments between the time of the last ALJ decision [*i.e.,*
June 14, 2013] and his date last insured [*i.e.,* December 31,
2015; *see* AR 24].

(AR 28; bracketed material added.)

The second ALJ also discussed the import of the first denial of Plaintiff's
original DIB application as follows:

[T]he claimant was found to be not disabled in a decision
by an ALJ, dated June 14 2013, based on a prior
application for period of disability and disability insurance
benefits protectively filed on December 7, 2011. (Ex. B1A.)
Therefore, this decision adjudicates the period from June
15, 2013, through the date of this decision [*i.e.,* April 6,
2016]. Furthermore, in the prior decision the claimant was
found not disabled because the claimant was capable of
performing other work. As a result, with respect to the
unadjudicated period under the current application for a
period of disability and disability insurance benefits, there is
a rebuttable presumption of continuing nondisability under

5

the *Chavez* Acquiescence Ruling (Social Security
Acquiescence Ruling (AR) 97-4(9). The claimant may rebut
this presumption by showing a "changed circumstance"
affecting the issue of disability with respect to the
unadjudicated period. [Footnote 1 omitted.] The
undersigned finds there has not been a showing of a
changed circumstance material to the determination of
disability and the presumption of continuing nondisability
has not been rebutted. Accordingly, the principles of *res
judicata* applies, [sic] the undersigned adopts the findings of
the prior ALJ decision, required under the sequential
evaluation process for determining disability. [¶] Again,
there is no evidence of any worsening since the date of the
prior decision by an ALJ [*i.e.,* from the date of the prior
decision on June 14, 2013 through the date of the second
opinion on April 6, 2016].

(AR 29-30; italics in original; bracketed material added.)

The second ALJ noted that VA records showed that Plaintiff "has been on
long-term opioid therapy for pain for chronic low back pain, had previously
received epidural steroid injections, underwent physical therapy, and . . . received
chiropractic treatment." (AR 30, citing, *inter alia,* Ex. B1F [AR 307-400].)

However, the second ALJ's opinion further discounted an opinion from the
VA, stating as follows:

[T]he claimant was noted to have 80 percent service
connected disability rating. (Ex. B1F, p. 79 [AR 385].) As
discussed in the prior decision, this disability rating has been
considered but given little weight (Ex. B1A, p. 13 [AR 131].)
In the Ninth Circuit, because the VA and Social Security

Administration disability programs are similar, an
Administrative Law Judge must ordinarily give great weight
to a VA determination of disability (*McCarty v. Massanari,*
298 F.3d 1072 (9th Cir. 2002)). However, because the VA
and SSA criteria for determining disability are not identical,
an Administrative Law Judge may give less weight to a VA
disability rating if there are persuasive, specific, valid reasons
for doing so that are supported by the record. (20 C.F.R. §
404.1504 and SSR [*i.e.,* Social Security Ruling] 06-03). The
claimant has continued to receive conservative treatment for
his mental and physical impairments. As discussed above,
the claimant's treating physician recommended the claimant
for light duty but not total disability (Ex. B1F, p. 90 [AR
396].) Accordingly, the undersigned gives little weight to the
Veterans Affairs disability determination because it is
inconsistent with the cited evidence.

(AR 31; bracketed material added.)

Like the first ALJ, the second ALJ found that Plaintiff was unable to do his
PRW. (*See* AR 32.) Nevertheless, at step five of the sequential evaluation, the
second ALJ found, based on the testimony from the VE at the second hearing, that
Plaintiff could still do three other jobs: (1) "market pricer," DOT no. 209.587-034;
(2) "assembler, plastic hospital parts," DOT no. 712.687-010; and (3) "bakery
worker conveyor," DOT no. 524.687-022. (AR 33-34.)

Accordingly, the second ALJ found that Plaintiff was not under a disability
from July 11, 2009, the onset date alleged in the second application, through
December 31, 2015, the date that Plaintiff was last insured for purposes of DIB.
(*See* AR 34, citing 20 C.F.R. § 404.1520(g).)

7

**IV.**

**STANDARD OF REVIEW**

The issue in Social Security disability cases is whether the claimant is "disabled" under section 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable impairment or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 423(d)(1)(A); *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012).

When the claimant's case is considered by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. *See Molina,* 674 F.3d at 1110 (citing, *inter alia,* 20 C.F.R. §§ 404.1520(a), 416.920(a)). First, the ALJ considers whether the claimant is currently working in substantial gainful activity. *Molina* at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months. *Id.* If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. *See Rounds v. Comm'r Soc. Sec. Admin.,* 807 F.3d 996, 1001 (9th Cir. 2015).

If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from his or her impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p. After determining the claimant's RFC, the ALJ determines at the fourth step whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed when she worked in the past, or as that

same job is "generally" performed in the national economy. *See Stacy v. Colvin,* 825 F.3d 563, 569 (9th Cir. 2016) (citing, *inter alia,* SSR 82-61); *see also* 20 C.F.R. §§ 404.1560(b), 416.960(b).

If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett v. Apfel,* 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. *See Tackett,* 180 F.3d at 1099 (citing 20 C.F.R. § 404.1560(b)(3)); *see also* 20 C.F.R. § 416.960(b)(3).

The claimant generally bears the burden at each of steps one through four to show that she is disabled, or that she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show that she is disabled. *See, e.g., Molina,* 674 F.3d at 1110; *Johnson v. Shalala,* 60 F.3d 1428, 1432 (9th Cir. 1995). However, at step five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. *See* 20 C.F.R. §§ 404.1560(c)(1)-(2), 416.960(c)(1)-(2); *Hill v. Astrue,* 698 F.3d 1153, 1161 (9th Cir. 2012); *Tackett,* 180 F.3d at 1100.

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision denying benefits to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence" is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.,* 740 F.3d 519, 522-23 (9th Cir. 2014) (citations and internal punctuation omitted).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina,* 674 F.3d at 1110; *see also Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (court will uphold Commissioner's decision when evidence is susceptible to more than one rational interpretation). However, the Court may only review the reasons provided by the ALJ in the disability determination, and may not affirm the ALJ on a ground upon which the ALJ did not rely. *Garrison v. Colvin,* 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted); *see also Orn,* 495 F.3d at 630 (citation omitted). Overall, the standard of review of an ALJ's decision is "highly deferential." *Rounds,* 807 F.3d at 1002 (citing *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009)).

Lastly, even when an ALJ has committed a legal error, a reviewing court will still uphold the ALJ's decision if the error was harmless, that is, if it was inconsequential to the ultimate nondisability determination, or where, despite the error, the Agency's path "may reasonably be discerned," even if the Agency has explained its decision "with less than ideal clarity." *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (citations and internal punctuation omitted).

## V.

## DISCUSSION

The Joint Stipulation presents a single disputed issue: Whether the ALJ properly evaluated Plaintiff's pain and symptom testimony. (*See* J. Stip. at 5.)

A.    Plaintiff's Claim of Error

Plaintiff notes that the second ALJ applied the presumption of continuing nondisability set forth in *Chavez v. Bowen,* 844 F.2d 69 (9th Cir. 1988) and found that, since Plaintiff had not shown the requisite "changed circumstances" since the date of the first decision on June 14, 2013, the principles of res judicata applied and the findings of the first ALJ should be adopted. (*See* J. Stip. at 3 and 7, citing AR 29-30, 122-34.) However, Plaintiff argues that the ALJ improperly applied *Chavez* because Plaintiff's symptoms have, in fact, gotten worse since June 14, 2013. (*See* J. Stip. at 8.)

In particular, Plaintiff argues that his "mental impairment has gotten significantly worse since the prior decision." (J. Stip. at 8.) Plaintiff argues that his testimony about "visual or auditory hallucinations," and his "feelings that he is being watched," were not in evidence at the time of the first hearing or the first ALJ's decision. (*See* J. Stip. at 8.)

Plaintiff also argues that the ALJ's characterization of Plaintiff's treatment as "conservative" is erroneous because Plaintiff received "injections in the past for pain" and Plaintiff has prescriptions for "narcotic pain medication" including Hodrocodone-acteaminophen and Vicodin. (*See* J. Stip. at 8-9, citing AR 349, 364) Plaintiff argues that Vicodin qualifies as "strong medication to alleviate pain." (J. Stip. at 9.) Plaintiff also argues that his medications do not control his symptoms because in August 2015, he reported to treating sources that "he had homicidal ideations but no plans" (citing AR 530), and in October 2015, he "wanted a referral for mental health specialist or PTSD treatment" (citing AR 513). (J. Stip. at 9.) Plaintiff argues that the ALJ erred by finding his symptoms "controlled." (J. Stip. at 9.)

Plaintiff also notes the assessment from the VA which found "a 50% disability rating for [Plaintiff's] major depressive disorder when calculating [Plaintiff's] total disability at 80%." (J. Stip. at 10.) Plaintiff argues that the ALJ

did not take the VA assessment or Plaintiff's mental impairments "into account," but instead relied on a consulting physician's opinion that "recommended light duty but not total disability," a recommendation which Plaintiff argues was only based on Plaintiff's physical restrictions. (*See* J. Stip. at 10, citing AR 28-29, 396.)

### B. Applicable Law

#### 1. Analysis of a Claimant's Credibility

The ALJ must make two findings before the ALJ can find a claimant's pain or symptom testimony is not credible. *See Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1102 (9th Cir. 2014) (citing 42 U.S.C. § 423(d)(5)(A)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler,* at 1102. As long as the plaintiff offers evidence of a medical impairment that could reasonably be expected to produce pain, the ALJ may not require the degree of pain to be corroborated by objective medical evidence. *See Bunnell v. Sullivan,* 947 F.2d 341, 346-47 (9th Cir. 1991). Second, if the claimant has produced such evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms.'" *Treichler,* 775 F.3d at 1102 (quoting *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)).

An ALJ's assessment of credibility should normally be given great weight, and where an ALJ's credibility finding is supported by substantial evidence, a reviewing court may not engage in second-guessing. *See Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002); *Nyman v. Heckler,* 779 F.2d 528, 531 (9th Cir. 1985). Furthermore, "[a]n ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. § 423(d)(5)).

When analyzing a claimant's subjective pain symptoms, the ALJ may consider factors relevant to the symptoms such as, *inter alia,* the claimant's daily activities; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment, other than medication, that the claimant receives or has received for relief of pain or other symptoms; or any other measures that the claimant has used to relieve pain or symptoms. *See* 20 C.F.R. § 404.1529. The ALJ may employ "ordinary techniques of credibility evaluation," such as prior inconsistent statements concerning symptoms, testimony that appears less than candid, or an unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, in assessing a claimant's credibility. *See Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted). *See also Thomas,* 278 F.3d at 958-59 (in analyzing credibility of claimant's pain complaints, ALJ may consider reputation for truthfulness, inconsistencies between testimony and conduct, work record); *Fair,* 885 F.2d at 603 (in analyzing claimant's pain, ALJ may consider evidence of daily activities, inadequately-explained failure to seek treatment or follow prescribed treatment). In addition, the ALJ may consider testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms about which the claimant complains. *See Thomas,* 278 F.3d at 958-59 (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997)).

However, once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony regarding subjective pain and other symptoms merely because the symptoms, as opposed to the impairments, are unsupported by objective medical evidence. *Lingenfelter,* 504 F.3d at 1035-36; *see also Bunnell,* 947 F.2d at 346-47. Nevertheless, "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."

*Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

2.    Application of Res Judicata In Light of Prior Application

In *Chavez v. Bowen,* the Ninth Circuit stated that "[t]he principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez v. Bowen,* 844 F.2d 691, 692 (9th Cir. 1988). The Social Security regulations also state that an ALJ may decide that there is cause to dismiss a request for a hearing before the ALJ, or to refuse to consider issues raised in a request for a hearing, where "[t]he doctrine of res judicata applies in that we have made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action." 20 C.F.R. § 404.957 (Title II disability insurance benefit applications); *see also* 20 C.F.R. § 416.1457 (Title XVI supplemental security income benefit applications).

A presumption of "continuing nondisability" arises following a first, final administrative decision denying an application, and the presumption of continuing nondisability means that it is presumed that the claimant is not disabled and is able to work after the date of the earlier denial. *See Chavez,* 844 F.3d at 693; *see also Vasquez v. Astrue,* 572 F.3d 586, 597 (9th Cir. 2009); *Lester v. Chater,* 81 F.3d 821, 827-28 (9th Cir. 1995) (as amended Apr. 9, 1996) (Commissioner may apply res judicata to bar reconsideraton of prior period to which disability determination has already been made). The principles of res judicata also make binding an ALJ's findings from a prior proceeding, such as findings about the exertional work level that the claimant can perform in light of her RFC. *See Chavez,* 844 F.2d at 694.

However, a "changed circumstance" that has occurred after the first proceeding became final, and that is raised in a second or subsequent proceeding seeking a disability determination pertaining to a period after the first denial, may

14

overcome res judicata and the presumption of continuing nondisability and allow further consideration on the issue of whether the claimant is disabled for the subsequent period. *See Chavez,* 844 F.2d at 694 (citing, *inter alia, Taylor v. Heckler,* 765 F.2d 872, 875 (9th Cir. 1985)); *see also Lester,* 81 F.3d at 827 (Commissioner's authority to apply res judicata to period subsequent to prior determination is more limited and does not apply where there are "changed circumstances"); *Alekseyevets v. Colvin,* 524 F. App'x 341, 344 (9th Cir. 2013) (unpublished) (an applicant previously found not disabled continues to be presumably not disabled unless she can show "changed circumstances" indicating a greater level of disability since the date of the prior decision (citing *Chavez*)). Examples of such "changed circumstances" include: when the claimant's age has increased to a new level, such as "advanced age," as described in 20 C.F.R. §§ 404.1563 or 416.963, and that may affect the claimant's ability to work; a reduction or cessation of work activity; when the claimant's impairments have increased in severity; when the claimant raises a new issue, such as the existence of an impairment that was not considered in the previous application; when the claimant was not represented by counsel at the time of the prior claim but is subsequently represented by counsel; or when the criteria for determining disability have changed. *See, e.g., Chavez,* 844 F.3d at 694 (attainment of advanced age not barred by res judicata and should be considered in second proceeding); *Lester,* 81 F.3d at 827-28 (where prior application did not present issue of mental impairments, res judicata did not bar subsequent application raising mental impairments).

In addition to establishing a "changed circumstance," the claimant must also show that the "changed circumstance" indicates a "greater disability." *See Chavez,* 844 F.2d at 693; se*e also Taylor,* 765 F.2d at 875 (where claimant's condition actually improved during period subsequent to first ALJ's decision, claimant has not shown requisite "changed circumstance"). Furthermore, where a claimant presents evidence in a second proceeding that has already been presented

in a first proceeding, the evidence is not "new and material" and cannot constitute a "changed circumstance" that can overcome the prior judgment and the res judicata bar. *See Chavez,* 844 F.2d at 694.[1]

### C.    Analysis

At the outset, the Court notes that Plaintiff does not dispute that the prior adjudication of his DIB application became final on June 14, 2013, the date of the first ALJ's decision. (*See, e.g.,* AR 134.) Accordingly, Plaintiff must show "changed circumstances" that have occurred after June 14, 2013 in order to overcome the *Chavez* presumption of continuing nondisability. *See Chavez,* 844

---

[1] After *Chavez,* the SSA issued an "Acquiescence Ruling," AR 97-4(9), regarding the *Chavez* decision. *See* AR 97-4(9). An "Acquiescence Ruling" is an announcement from the SSA explaining how it will apply a decision from a Federal circuit court that it views as inconsistent with its own national policies for adjudicating Title II and Title XVI disability claims. *See* Bloch on Social Security, § 4:2, Sources of Social Security Law (Westlaw Jan. 2017). In AR 97-4(9), the SSA stated that *Chavez* differs from Social Security policy in that "a prior final determination or decision that a claimant is not disabled does not give rise to any presumption of a continuing condition of nondisability," and "[w]hen a subsequent claim involves an unadjudicated period, the determination or decision as to whether a claimant is disabled with respect to that period is made on a neutral basis, without any inference or presumption that a claimant remains "not disabled." AR 97-4(9) (Dec. 3, 1997). Consequently, the SSA has stated that it will follow *Chavez* and "[w]hen adjudicating the subsequent claim involving an unadjudicated period, adjudicators will apply a presumption of continuing nondisability and determine that the claimant is not disabled with respect to that period, unless the claimant rebuts the presumption." AR 97-4(9). The SSA said that "[a] claimant may rebut the presumption by showing a 'changed circumstance' affecting the issue of disability with respect to the unadjudicated period, *e.g.,* a change in the claimant's age category under 20 CFR 404.1563 or 416.963, an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability. AR 97-4(9). Furthermore, "[a]djudicators must adopt such a finding [*i.e.,* on a claimant's RFC, education, work experience, or other required finding] from the final decision on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." AR 97-4(9).

F.2d at 693-94. If Plaintiff can show such qualifying "changed circumstances" and overcome the presumption of continuing nondisability, the Court will consider whether plaintiff is disabled for the subsequent period, that is, the period from June 14, 2013, the date of the first decision, up through April 6, 2016, the date of the second decision. (*See* AR 34.) *See Chavez,* 844 F.2d at 694; *see also Lester,* 81 F.3d 827; *Alekseyevets,* 524 F. App'x at 344. Furthermore, as noted, the ALJ found the *Chavez* presumption of continuing nondisability still applied because there was no showing of a "material" changed circumstance, and "there is no evidence of any worsening since the date of the prior decision." (AR 29-30.)

In this Court's view, analysis under the *Chavez* framework of whether there are "changed circumstances" that are "material" and indicate a "greater disability" after June 14, 2013, the date of the prior ALJ's decision, should primarily be made in reference to evidence that was itself received or developed after June 14, 2013. *See, e.g., Chavez,* 844 F.2d at 693; *Taylor,* 765 F.2d at 875. Evidence relating to circumstances prior to that date, such as the ALJ's reference to a chiropractor's report of October 15, 2012 (*see* AR 30, 384-91), does not overcome the presumption. Thus, Plaintiff's citation to records from September 2012 that Plaintiff "heard sounds, noises, and gunshots that [others don't] hear or see" in support of his argument that his "auditory hallucinations" have "gotten significantly worse since the prior decision" (*see* J. Stip. at 8, citing, *inter alia*, AR 393) does not evidence "changed circumstances" after June 14, 2013 and does not overcome the *Chavez* presumption.

In any event, substantial evidence supports the ALJ's determination that Plaintiff has not overcome the *Chavez* presumption or shown that his impairments now render him disabled. To the extent that Plaintiff argues that his hallucinations, particularly audio hallucinations, have gotten worse since the first ALJ's decision, the ALJ cited a report from an examining psychiatrist, Dr. Earbin Stanciel, who conducted a "complete psychiatric evaluation" of Plaintiff around

May 2, 2015. (*See* AR 26-27, citing Exh. B3F [AR 404-08].) Among other things, the ALJ noted that Plaintiff had reported to Dr. Stanciell "episodic auditory hallucinations but denied paranoia or suicidal ideations"; but Plaintiff had also reported that he drives a car and is able to go places by himself. (AR 26.) The ALJ noted that, in spite of these complaints, Dr. Stanciell found only mild restrictions in Plaintiff's activities of daily living, and only moderate difficulties with concentration, persistence, or pace. (*See* AR 26.)

The ALJ further recounted that Dr. Stanciell's report was one of a number of pieces of evidence that supported the finding that Plaintiff's condition had not worsened since the first ALJ's decision. (*See* AR 30-31.) The ALJ noted that, while Dr. Stanciell diagnosed a mood disorder and assessed a Global Assessment of Functioning score ("GAF") of 58, Dr. Stanciell also opined that Plaintiff "would have no limitations performing simple and repetitive tasks and no limitations performing detailed and complex tasks," and he would have only mild or moderate difficulties in performing work activities and completing a normal workday or workweek. (*See* AR 31, citing AR 404-08.) The second ALJ also found, in essence, that because the RFC in his opinion had incorporated Dr. Stanciell's findings, and since the RFC that he found was the same as the RFC that the first ALJ had assessed, "there has not been a showing of a changed circumstance material to the determination of disability and the presumption of continuing nondisability has not been rebutted. (AR 32.) Since the ALJ properly compared Dr. Stanciell's findings from the consultative examination with Plaintiff's own subjective complaints, and offered specific, clear, and convincing reasons for crediting Dr. Stanciell's opinion and discounting Plaintiff's more-severe complaints, the ALJ did not err. *See, e.g., Thomas,* 278 F.3d at 958-59 (ALJ may consider opinions from physicians concern nature, severity, and effect of claimant's symptoms); *Rollins,* 261 F.3d at 857 (ALJ may properly credit opinions from doctors who have examined claimant in analyzing claimant's credibility).

In observations that are also relevant to Plaintiff's activities of daily living, the ALJ noted that Plaintiff testified at the hearing that he had recently gone on a long car trip to Texas, which involved two days, each way, as a passenger in the car. (*See* AR 28.) Although the ALJ did not specifically rely on this testimony in making a credibility finding, the Court notes that the sitting ability is consistent with the limited RFC set forth in both opinions.

Likewise, the ALJ's finding that Plaintiff's back treatments have been "conservative" is rational and reasonably supported by the record. Where a claimant has reported disabling pain, but has failed to pursue more aggressive or alternative treatments, the fact that the claimant has only received conservative treatment may undermine the claimant's credibility. *See Tommasetti,* 533 F.3d at 1039-40. The ALJ found, presumably referring to back pain, that Plaintiff has "received conservative care with no surgical intervention." (AR 30.) The record supports a finding that Plaintiff has never had back surgery to treat his back pain. The ALJ cites to a record dated January 6, 2014 from one of Plaintiff's treating VA doctors, Dr. Prashant V. Phatak, which reviews an MRI of Plaintiff's spine and notes "bulging disks" and some "mild" spinal stenosis and moderate "neuroformainal stenosis at L5/S1," but states that "[t]he changes overall are mild to moderate to other pts [sic] and likely do not require any surgery." (*See* AR 30, citing AR 359-61.) The ALJ also reasonably and convincingly discussed a report from Dr. Vincent Bernabe, a consultative orthopedist, who examined Plaintiff on May 5, 2015 regarding Plaintiff's complaints of back and shoulder pain. (*See* AR 31, citing Ex. B4F [AR 409-13].) The ALJ noted that Dr. Bernabe's findings were mostly within normal limits, and that, while Dr. Bernabe diagnosed lumbago (*i.e.,* low back pain), Dr. Bernabe assessed no physical limitations or restrictions. (*See* AR 31.) The Court notes that Plaintiff himself testified at the hearing that he was told there was a "50/50 chance" that surgery would help him, and yet he has not pursued surgery. (*See* AR 49, 51.)

The ALJ also noted that Plaintiff presented to an emergency room in March 2015 for back pain and a "medication refill." (AR 30, citing B2F [AR 401-03].) The ALJ stated that "[t]he examination revealed normal gait and posture, no spinal deformity, decreased ranged of motion in the back because of pain, and [that Plaintiff] was neurologically intact." (AR 30.) The ALJ said that Plaintiff "was prescribed Norco and discharged in stable condition." (AR 30.) The record reflects that Plaintiff "ran out of pain med," but it also states that Plaintiff had "no tingling, numbness or weakness" and "no limping"; and under "psychiatric" the record states "normal mood and affect. No hallucinations. Not suicidal or homicidal." (*See* AR 401.)

Taken together, it appears that the ALJ's characterization of Plaintiff's back treatments as "conservative," with no history of any back surgery, is supported by substantial evidence in the record. *See, e.g., Scott v. Berryhill,* No. 1:15-CV-1831-GSA, 2017 WL 1549941, at *7 (E.D. Cal. May 1, 2017) (where plaintiff has received physical therapy and epidural injections for back pain but declined surgery, ALJ's finding that treatment was "conservative" was supported by the record).

Perhaps less well-supported are the ALJ's findings about the "conservative" nature of Plaintiff's treatments for his mental impairments and pain. Although the ALJ acknowledged that Plaintiff "testified [that] he just began treatment with a psychiatrist at the VA" (AR 28), the ALJ's opinion went on to state that Plaintiff has had "no treatment from any specialists," and the ALJ said that "there is no evidence that the claimant has seen a psychiatrist, been hospitalized for psychiatric treatment, or received any consistent psychiatric treatment or psychotherapy." (AR 30.) However, the Court's review of the record reveals evidence of psychiatric treatments after June 14, 2013. For example, a report from psychiatrist Dr. Athanasios Mihas, dated September 4, 2015, reflects a recent referral to Dr. Mihas by Plaintiff's primary care provider. (*See* AR 519-21.) The record notes that

Plaintiff "has had chronic problems sleeping" and "has lost 10-5 lbs [sic] in the last few months." (AR 519.) The record reflects that Dr. Mihas started Plaintiff on two new drugs, and that Plaintiff was going to "start individual therapy." (AR 521.) An earlier record from September 2, 2015, is also signed by psychiatrist Dr. Mihas and notes, *inter alia,* that Plaintiff was seeking "medication management consultation and individual therapy." (*See* AR 522-25.) Plaintiff himself also testified at the hearing that a VA psychiatrist (assumedly Dr. Mihas) calls him at his home every two weeks. (*See* AR 54-55.) Accordingly, the ALJ's findings that Plaintiff has never seen a psychiatrist or received consistent psychiatric treatment are apparently contradicted by the record.

Also lacking the same level of support is the ALJ characterization of Plaintiff's medication regimen as "routine" and "very conservative." (*See* AR 30.) Plaintiff argues that his narcotic pain medications, including Vicodin, are "strong" and not conservative. (*See* J. Stip. at 8-9.) But, as Plaintiff notes, different courts have reached different conclusions about whether Vicodin or other similar narcotics constitute "conservative" or "aggressive" treatments. *Cf. Aguilar v. Colvin,* No. CV 13-08307-VBK, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) (treatment with strong narcotics such as Vicodin is not "overly conservative"); *Brunkalla-Saspa v. Colvin,* No. ED CV 13-1352 JCG, 2014 WL 1095958, at *1 (C.D. Cal. March 18, 2014) (Vicodin qualifies as strong pain medication) *with Martin v. Colvin,* No. 1:15-CV-01678-SKO, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017) (overall record may justify ALJ's characterization of treatment as "conservative," notwithstanding prescription of Vicodin and Norco medications for pain); *Bartlett v. Colvin,* No. 1:14-cv-00142-SB, 2015 WL 2412457, at *12 (D. Or. May 21, 2015) (characterizing Vicodin as "conservative treatment"). Arguably, since the ALJ may properly resolve ambiguities in the record, the ALJ could construe Plaintiff's long use of Vicodin and Norco, which are reflected in the record both before and after the date of the prior decision on June 14, 2013, as

"conservative." *See Martin,* 2017 WL 615196, at *10; *Bartlett,* 2015 WL 2412457, at *12.

However, Plaintiff's arguments that the ALJ did not take "into account" the VA's findings of "50% disability rating" for "major depressive disorder" and his "total disability" rating of "80%" are unavailing. (*See* J. Stip. at 10; *see also* AR 385.) In fact, the ALJ's opinion devotes a lengthy paragraph to the VA's disability rating. (*See* AR 30-31.) The ALJ noted that the VA disability rating was "discussed in the prior decision," and the record reflects that the VA disability rating was issued on October 15, 2012, before the June 14, 2013 decision. (*See* AR 384-85.) In this Court's view, because the record itself pre-dates the first ALJ's decision, that record itself cannot constitute a "changed circumstance" that would overcome the *Chavez/*res judicata presumption of continuing nondisability. *See Chavez,* 844 F.2d at 694; *see also Lester,* 81 F.3d 827; *Alekseyevets,* 524 F. App'x at 344.

Further, the ALJ noted that he may give the VA disability rating less weight "if there are persuasive, specific, valid reasons for doing so that are supported by the record." (AR 31, citing 20 C.F.R. § 404.1504 and SSR 06-03.) The ALJ is correct: the Ninth Circuit has stated that a VA rating is not conclusive because the VA and SSA disability criteria are not identical; in fact "a partial disability rating might cut against rather than in favor of an SSA determination that the individual could not perform remunerative work of any kind." *McLeod v. Astrue,* 640 F.3d 881, 886 (9th Cir. 2011) (citing, *inter alia, McCarty v. Massanari,* 298 F.3d 1072 (9th Cir. 2002) and 20 C.F.R. § 404.1504); *see also* SSR 06-03p (Westlaw Aug. 9, 2006) (disability determination made by VA is not binding on SSA). The ALJ gave less weight to the VA rating because: (1) "claimant has continued to receive conservative treatment for his mental and physical impairments"; (2) "claimant's treating physician recommended the claimant for light duty but not total disability"; and (3) the VA disability determination "is inconsistent with the cited evidence." (AR 31, citing Ex. B1F, p. 90 [AR 396].)

As discussed above, the ALJ's opinion that Plaintiff has received "conservative" treatment for his physical impairments is clearly supported by substantial evidence, while the ALJ's opinion that Plaintiff's treatments for mental impairments have been "conservative" is perhaps less so. However, the record reflects that claimant's treating VA physician, Dr. Phatak, in a record dated September 20, 2012, did note that "pt has low back pain and is recommended for light duty but not total disability." (AR 396.) Thus, as contemplated in *McLeod,* because the VA disability rating does not indicate total disability, and does not preclude the possibility that Plaintiff can perform the other work that the ALJ identified at step five in his opinion, the ALJ's did not err in discounting the VA disability rating. *See McLeod,* 640 F.3d at 886.

In light of the record as a whole, this Court finds that the ALJ's reasons for discounting Plaintiff's subjective complaints were sufficiently specific, clear, and convincing. While in some instances the evidence supporting certain sub-conclusions of the ALJ was less substantial than others, such as the ALJ's opinion that Plaintiff's pain management has been conservative, overall the ALJ's opinion was supported by substantial evidence and it cannot be said that the ALJ erred in evaluating Plaintiff's pain and symptom testimony. In light of the recent opinions from Dr. Stanciel discussing Plaintiff's mental impairments, the opinion from Dr. Bernabe discussing Plaintiff's back problems, Plaintiff's apparent failure to pursue more aggressive back treatments, and the activities of Plaintiff's daily living which are consistent with the RFC in both of the ALJ's opinions, the ALJ has provided specific, clear, and convincing reasons to discount the severity of Plaintiff's subjective complaints. Taken together, there is substantial evidence in the record to support the ALJ's finding that Plaintiff has not shown material "changed circumstances" sufficient to overcome the *Chavez/*res judicata presumption of continuing nondisability, and to support the finding that Plaintiff can do other work. Accordingly, the denial of Plaintiff's latest DIB application is affirmed.

**VI.**

**CONCLUSION**

For the reasons stated above,

IT IS ORDERED that the decision of the Commissioner is AFFIRMED, and Judgment shall be so entered.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on the respective counsel for Plaintiff and Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED:   June 15, 2017

_____
JOHN D. EARLY
United States Magistrate Judge